In the United States Bankruptcy Court

For the Northern district of Illinois

Eastern Division

IN RE:                                    CASE NO.  [15-01145]

Caesars Entertainment Operating Company, Inc.      Judge: [A. Benjamin Goldgar]

                                          Chapter [11]

[Karalyn Schuck], [Plantiff],             Trustee—[name of trustee] Patrick layng

        vs.                               Adversarial Proceeding No.

Caesars Entertainment Operating Company, Inc      [xx]

---

Request hearing on Wednesday, September 2, 2015

## Malicious Harassment and misuse of state licensing credentials.
## Award Sought $
### Disregard of Federal and State laws regarding harassment, misuse of state licenses and dismissal following a whistle blowing event

### Preliminary Statement

This complaint for [$dollar value] pursuant to 11 U.S.C. [enter statute number]. This request is

to preclude my case from bankruptcy proceedings and grant me a trial by jury. Damages are

sought for termination after a whistle blowing event. Caesars Entertainment presented me to

the State of New Jersey as the Spa manager to receive licensing as a Spa. Following the

licensure the Caesars' Spa manager failed to hire me full time as promised and brought in a new

team. Exposure of the misuse of my license to the general manager led to my dismissal.

**Jurisdiction and Venue**

This court has jurisdiction over this adversarial proceeding pursuant to 28 U.S.C #1334 and

#157 in that the action arises in and relates to the bankruptcy case , *In re* [Caesars Entertainment

Operating Company, Inc], Case No. 15-01145, filed on [~~date the bankruptcy case was file~~] January 15th 2015 and presently

pending under this Court. This proceeding is a core proceeding under {ENTER applicable law}.

The venue is proper in the United states Norther District of Illinois under {ENTER THE LAW #}

**Parties**

The plaintiff is an individual who resides in Atlantic County in the State of New Jersey.

The plaintiff did business in Atlantic County in the State of New Jersey prior to the bankruptcy.

**Statement of the Facts**

In July 2012 at Caesars, I began employment at Caesars Entertainment, Bally's Spa in Atlantic City, New

Jersey. At that time the Caesars spa manager, name here interviewed me for a position as on-call

massage therapist and esthetician and offered me a part-time/flexible position at 7.50 $ an hour plus

commission and tips to perform the following services:

- Massage

- Body treatments

- Waxing services

- Facial services

- Poker player massage

At that time I delivered the services listed above in the old aerobics studio, separated from the remainder of the team. The conditions were unsatisfactory with walls, floors and work counters (describe here) and spa products which were expired, samples and less quality. Often I used my own product that was not part of the employment agreement.

During the 15 months under employment I built a steady clientele and increased the exposure of the salon in the Atlantic City community. I had zero customer complaints, was requested and had returning clientele .

My concerns arose when I discovered on the day of state inspection the spa manager was presenting my credentials to the state as manager of the salon. Both my esthetician's license and driver's license were presented to the state and I had to answer questions regarding the practices at the spa as if I had established the policies.

After a provisional license was granted I returned to my normal work. At the same time hiring began for full time spa workers- salon (hair and nails). I was not offered a full time employment.

It is also important to note that during my tenure at Caesars the general manager changed and my manager Andrea Magalhaes, conducted sexual affairs with both men thus giving me no step manager to report my concerns during this difficult time.

Some of my concerns included:

- Hostile work environment

- The salon did not have proper credentials present like managers license and fire certificates and other state laws

- Issues with my director not following company policy state laws and regulations.

During this period of time both pre-licensure and post licensure I was treated with less respect than my peers as evidenced by:

- Andrea Magalhaes

- Courtney Pimentel


My employment unraveled in the following way; on October 17, 2012 I sought both the spa manager and the general manager to discuss my employment status. I worked my full work shift that day. The following day Friday October 18, 2012 was called in to investigations with human resource. Meeting was tape recorded .I was put on suspension pending investigations .  On October 22, 2012 I was sent letter of termination with no previous write ups for engaging in malicious gossip.

Subsequently I met with an attorney to discuss my case.

During my interview with unemployment, my attorney was present and the following was said by the spa manager, Courtney  Pementel.

- Misrepresented the facts of dismissal, fabricated my complaint , and stated that I was sent home for the day .

- I worked a full shift and had a facial at 4:30 clock out with my coworkers



WHEREFORE, plaintiff prays that the Court:

- Awards me a trial by jury for malicious harassment and third party sexual harassment

- Other asks for a public defender in state of Illnois to represent me on court dates.

Grant such other, further and different relief as may be just and proper.

Respectfully submitted

*Karalyn Schuck* 7-2-15

Karalyn Schuck, Pro Se

Karalyn Schuck

1119 Mediterranean Ave

Atlantic City NJ 08401

Phone 215-264-5774

Karalyn.schuck@yahoo.com

Karalyn Schuck
1119 Mediterranean Ave
Atlantic City NJ 08401
June 15, 2015

Clerk of the Court
US Bankruptcy Court, Northern District of Illinois
Eastern Division
219 South Dearborn Street
Chicago, IL 60604

Dear Clerk of the Court:

Prior to Caesar's International Chapter 11 Bankruptcy I had an active lawsuit against Caesars
Atlantic City for wrongful termination following a whistle blowing activity on my part.  I am
requesting my case be exempt from the bankruptcy since I was subjected to unlawful and malicious
treatment while under their employment and afterwards when I attempted to exercise my right to
unemployment benefits. I am also requesting my case be heard in Chicago with a jury present.

The case number in the New Jersey court for the pending bankruptcy matter for Caesars
Entertainment Operating Co., Inc. is 15-B-01145.  The case involves wrongful use of my New Jersey
Massage Therapy, Facial and Cosmetology licenses to gain state licensure as a SPA and Salon. It also
includes willful and malicious harassment, humiliation, third party sexual harassment and wrongful
termination.

My official start date was June 2012 as an on call massage therapist and esthetician.  During that
year I book all of my services under "miscellaneous" in the computer system, per management
instructions. The consequence of this was at the end of the year my time was not tracked making
me ineligible for protection under New Jersey state laws regarding working full time, treated as part
time or contract. In addition I was used for labor not chargeable and not recorded in their books
such as housekeeping and laundry of SPA equipment.

My year of service was marked with shunning, a separate area to work from the remainder of the
staff, no access to the staff locker facilities and sub-standard equipment and supplies.  I was force
to charge customers for outdated and free supplies. The room made available to me was an old
aerobics studio.  I was forced to keep this area clean a service for which I was not compensated.

In June of 2013 the state came to inspect and without my knowledge I was presented as the
manager and my license was used to demonstrate the credentials were in place to qualify as a SPA

Clerk of the Court
June 15, 2015
Page 2

offering esthetician services. I learned at this time that I was not covered to perform the services I had been performing as there was no permit. My license could have been revoked due to this reckless behavior. Not at any time did I perform any managerial functions at the spa not I was I aware that I was being used for this purpose. This was willful disregard of me personally and professionally.

In September 2013, the Salon opened, however the state recommendations on the initial approval were not followed by management. I expressed concern since my license was used to gain the initial certification. The manager, Andrea Magalhaes also hire full time employees with health benefits however I was not offered a position.

In October, 2013 I notified Andrea about my employment status and requested a meeting. A meeting was granted with Ms. Magalhaes and her manager and known paramour Rob Paldino. We discussed the situation, the use of my license and the presentation of my qualifications to the state without me present nor having the authority to execute best practices at the spa. Ms. Magalhaes denied the use of my credentials. Mr. Paldino was not interested in my situation or any past indiscretions on the part of Ms. Magalhaes related to fraudulent representation of the Spa management to the State of New Jersey. I questioned his motives in protecting Ms. Magalhaes and was asked to leave the room but return to work. I performed worked a full day and performed a facial at 4:30 PM that day. I did not abandon the spa nor my clients. It is also worthy to note that Ms. Magalhaes was brought into the spa with minimum spa experience by her the first Operations Director, Brad Weismann who was later transferred to another property.

The confrontation was followed up with a meeting with Human Resources on October 22, 2013 wherein my situation was not presented by management to Human Resources, the focus being my discussions around their relationship and my mention of it during the conversation related to my employment status. I was suspended and ultimately released for "malicious gossip" on October 22, 2013. I never discussed their relationship with other employees at Caesar's.

After my termination I sought both legal advice and unemployment. At the unemployment meeting which was attended by my attorney Ms. Magalhaes reported I abandoned my position and did not work for the remainder of the day to the unemployment. She also indicated that I gossiped at work when I did not work anywhere near the remainder of the staff and never discussed her affairs. I was denied unemployment based on her review which was meant to cause me first emotional harm and secondly financial harm.

Thank you for consideration of this pending wrongful termination as an important action and protection against Caesar's, Atlantic City. I have customer references and letters of commendation to attend to my service to the clientele of Caesar's Spa

Karalyn Schuck

Joshua S. Boyette, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Office: (856) 685-7420
Fax: (856) 685-7417
*Attorney for Plaintiff*

RECEIVED and
FILED

OCT 21 2014

ATLANTIC COUNTY
LAW DIVISION

| | |
|---|---|
| **KARALYN SCHUCK**<br>1119 Mediterranean Ave.<br>Atlantic City, NJ 08401<br><br>    Plaintiff,<br><br>    v.<br><br>**CAESAR'S ENTERTAINMENT<br>CORPORATION**<br>1900 Pacific Ave.<br>Atlantic City, NJ 08401<br><br>    Defendant. | **SUPERIOR COURT OF NEW JERSEY<br>ATLANTIC COUNTY - LAW<br>DIVISION**<br><br>**CIVIL ACTION<br>DOCKET NO:** $L\ 6190-14$<br><br>**COMPLAINT WITH JURY DEMAND** |

## CIVIL ACTION COMPLAINT

Karalyn Schuck (hereinafter "Plaintiff"), by and through undersigned counsel,

hereby complains as follows against Defendant Caesar's Entertainment Corporation

(hereinafter "Defendant").

## INTRODUCTION

1. Plaintiff has initiated this action to redress Defendant's violations of the

Conscientious Employee Protections Act ("CEPA"), for wrongful termination in violation

of public policy, and for creating a sexually hostile work environment and for retaliating

against her for her complaints of same in violation of the New Jersey Law Against

Discrimination ("NJLAD"). Defendant fired Plaintiff due to her reporting unlawful

business practices, and/or indicating that she would continue to report unlawful business

practices, in violation of the CEPA. Furthermore, Defendant fired Plaintiff due to her objecting to a sexual relationship between her immediate managers which created a hostile work environment and negatively affected the conditions of Plaintiff's employment, in violation of the NJLAD. As a result of said actions, Plaintiff suffered damages as set forth herein.

## PARTIES

2. The foregoing paragraphs are incorporated herein as if set forth in full.

3. Plaintiff is an adult individual, with an address as set forth in the caption.

4. Defendant is an entity which operated in the State of New Jersey with an address as set forth in the caption.

5. At all times relevant herein, Defendant acted through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment.

## FACTUAL BACKGROUND

6. The foregoing paragraphs are incorporated herein as if set forth in full.

7. In or around June 2012, Defendant hired Plaintiff as a part-time on-call massage therapist at Defendant's Spa at the address set forth in the caption.

8. Since 2009, Plaintiff has possessed a License in Cosmetology (hereinafter "License") in compliance with New Jersey state regulations.

9. At the time of Plaintiff's hire in June 2012, Plaintiff was an Experienced Practicing Licensee (hereinafter "EPL") with at least three (3) years of experience in cosmetology.

10. In or around September 2012, Defendant acquired a Salon and began

2

preparing the Salon store to open adjacent to the Spa.

11. In or around November 2012, Defendant's Supervisor Andrea assigned Plaintiff in a separate room at the Spa with spa products and equipment for the purpose of performing skin treatments on clients, including but not limited to facial and wax treatments (hereinafter collectively "esthetic services").

12. Upon information and belief, Defendant's Spa was not in compliance with New Jersey state regulations to offer esthetic services to clients in November 2012.

13. Nonetheless, Supervisor Andrea told Plaintiff that she was to perform both massages and esthetic services as needed for Defendant.

14. Supervisor Andrea also told Plaintiff that Defendant would gradually transition Plaintiff to full-time status and accordingly, Plaintiff would receive health benefits.

15. Thereafter, Defendant began booking Plaintiff appointments for esthetic services at the Spa under "miscellaneous."

16. Plaintiff regularly performed esthetic services for clients at the Spa from in or around November 2012 to in or around October 2013 upon request.

17. In or around January 2013, Supervisor Courtney sent Plaintiff a text message instructing Plaintiff to drop off at the office a copy of two forms of identification, social security card, and Plaintiff's License.

10. Per Supervisor Courtney's instructions, Plaintiff provided Supervisor Courtney copies of two forms of identification, social security card, and License that same day.

11. Approximately a week after Plaintiff provided Supervisor Courtney said

3

documents, Supervisor Andrea requested a meeting with Plaintiff.

12. During said meeting, Supervisor Andrea told Plaintiff that she registered the Salon (which was acquired in September 2012 and not yet approved to open) under Plaintiff's information and License.

13. Supervisor Andrea told Plaintiff that Defendant required her to be at the Salon five (5) days a week sand moving forward because "Plaintiff [was] the only EPL."

14. Supervisor Andrea told Plaintiff that Defendant's Human Resources Department ("HR") would not approve Plaintiff's full-time request at that time.

15. Supervisor Andrea did not promote Plaintiff to a managerial position at this time, or adjust Plaintiff's on-call status to full-time status, or modify Plaintiff's duties and/or responsibilities.

16. In or around February 2013, Supervisor Andrea called Plaintiff and asked Plaintiff how to prepare for the World Series of Poker that Defendant's casino was hosting.

17. Plaintiff explained that each employee was required to obtain a permit from the New Jersey Casino Controls Commission for a small fee in order to work on the casino floor during the World Series of Poker.

18. Plaintiff explained that when she worked as a masseuse on the casino floor during the World Series of Poker at Revel Casinos, she was required to obtain said permit per New Jersey state regulations.

19. Shortly thereafter, Supervisor Andrea sent Defendant's Spa employees an email directing all employees who wished to work on the casino floor for the World Series of Poker to obtain said permit.

4

20. Supervisor Andrea also hired new masseuse employees for the World Series of Poker.

21. Two such employees, Joanne Rafferty and Hillary Morrison, told Plaintiff that Supervisor Andrea never told them to obtain permits, and as such, never obtained permits for the duration of the World Series of Poker.

22. Joanne Rafferty and Hillary Morrison continued to work on the casino floor after the conclusion of the World Series of Poker without the required permits.

23. In or around June 2013, Supervisor Courtney texted Plaintiff and asked Plaintiff to meet her at her office with Plaintiff's License and photo identification.

24. When Plaintiff arrived at Supervisor Courtney's office, Supervisor Courtney informed her that inspector Christine Green (hereinafter "Inspector Green") from the New Jersey Board of Cosmetology and Hairstyling was on site to approve the opening of the Salon.

25. Supervisor Courtney then told Plaintiff to introduce herself to Inspector Green as the store manager of the Salon and show Inspector Green Plaintiff's License and photo identification.

26. At no point during Plaintiff's tenure with Defendant was Plaintiff a manager.

27. Nonetheless, per Supervisor Courtney's instructions, Plaintiff introduced herself to Inspector Green as the store manager and produced her License and photo identification.

28. Plaintiff then reported back to Supervisor Courtney's office.

29. Supervisor Courtney instructed Plaintiff to go to the room where Plaintiff had been performing esthetic services since November 2012, and "clean up the room" before

5

Inspector Green was able to inspect same.

30. When Plaintiff asked for the reason, Supervisor Courtney told Plaintiff that Defendant "wasn't approved to be doing facials," and again instructed Plaintiff to "clean up the room."

31. As instructed by Supervisor Courtney, Plaintiff went to her room and put away the equipment and products that Supervisor Andrea had provided her.

32. In or around September 2013, Defendant's Salon opened under Supervisor Courtney's management.

33. Plaintiff was not promoted to a managerial position at such time or given full-time employment.

34. As such, in or around October 2013, Plaintiff contacted Defendant's HR regarding the status of her full-time employment and health benefits.

35. Defendant's HR informed Plaintiff that they needed Plaintiff's manager approval, but no manager had submitted a form or requested a change in the status of Plaintiff's employment since her hire in June 2012.

36. In or around October 16, 2013, Plaintiff emailed Supervisor Andrea to discuss her employment status.

37. On or around October 17, 2013, Plaintiff met with Supervisor Andrea and Defendant's director of hotel operations, Rob (last name unknown) ("Director Rob").

38. Plaintiff complained to Director Rob that Supervisor Andrea had fraudulently used Plaintiff's information and License to register Defendant's Salon, but did not promote her to a managerial position, or adjust her position to full-time, or provide her with health benefits as promised.

6

39. Plaintiff complained that Supervisor Andrea's personal relationship with Supervisor Courtney afforded Supervisor Courtney preferential treatment, including but not limited to a management position for which she did not have the proper qualifications, such as a License.

40. Plaintiff also complained that, as was the common belief amongst Defendant's staff, Director Rob and Supervisor Andrea's alleged sexual relationship prevented employees from complaining about Supervisor Andrea's misconduct.

41. Plaintiff also complained that Director Rob did not appropriately respond to Plaintiff's complaints of misconduct by Supervisor Andrea because of Director Rob's alleged sexual relationship with Supervisor Andrea, which afforded Supervisor Andrea preferential treatment.

42. Supervisor Andrea denied using Plaintiff's License to register Defendant's salon and denied promising Plaintiff full-time status at any point during Plaintiff's tenure.

43. Plaintiff objected to Supervisor Andrea's denials and told Director Rob that Supervisor Andrea was not telling the truth.

44. Director Rob told Plaintiff he would "not allow [Plaintiff] to speak about [Supervisor Andrea] in that manner," and concluded the meeting.

45. Later that same day, Supervisor Courtney asked Plaintiff to meet with her at the office.

46. During said meeting, Supervisor Courtney told Plaintiff that she had removed Plaintiff from the next day's schedule and as such, she did not need to report to work on October 18, 2014.

47. The next day, on or around October 18, 2014, Defendant's HR called Plaintiff

7

and requested a meeting.

48. During said meeting, Plaintiff reported to Defendant's HR that Supervisor Andrea and Supervisor Courtney fraudulently licensed Defendant's salon under Plaintiff's information and License.

49. Furthermore, Plaintiff complained that per New Jersey state regulations, Plaintiff should have been made store manager of the Salon as she was the only qualified EPL at that time.

50. Plaintiff also reported that Supervisor Andrea and Supervisor Courtney unlawfully provided esthetic services to clients against New Jersey state regulations for a period of at least seven (7) months.

51. Plaintiff also reported that Supervisor Andrea knowingly permitted employees to work on Defendant's casino floor without the proper permits required by New Jersey state regulations.

52. Plaintiff told Defendant's HR that Plaintiff believed Supervisor Andrea and Supervisor Courtney's actions to be unlawful, and Plaintiff had an obligation to report same.

53. At the end of the meeting, Defendant's HR told Plaintiff that she was suspended pending the outcome of Defendant's investigation.

54. On or around October 22, 2013, Plaintiff received a letter in the mail terminating her from her position of "on-call massage therapist" for "engaging in malicious gossip."

55. Prior to Plaintiff's termination, Plaintiff had received no write ups or disciplinary actions.

8

66. As a result, Defendant has violated the NJLAD.

## COUNT II
## Violations of NJLAD
### (Retaliation/ Wrongful Termination)

67. The foregoing paragraphs are incorporated herein as if set forth in full.

68. Plaintiff reasonably believed that she was subjected to a hostile work environment engendered by an alleged sexual relationship between her direct supervisors.

69. Plaintiff complained to her supervisor's supervisor, Rob, that she believed she was being treated unfairly because he was in a relationship with her supervisor, Andrea.

70. Within a few hours of complaining of same, Defendant removed Plaintiff from the schedule and instructed Plaintiff not to report to work the next day.

71. Plaintiff complained to Defendant's HR that the relationship between her supervisors intimidated and/or discouraged Plaintiff from complaining about various conditions of her employment she reasonably believed to be unlawful.

72. Immediately thereafter, Defendant suspended then fired Plaintiff for "engaging in malicious gossip," referring to Plaintiff's complaint of the alleged sexual relationship between her immediate supervisors.

73. Plaintiff did not have any prior write-ups or disciplinary actions.

74. As a direct and proximate cause of the above actions, Plaintiff has suffered damages.

75. As a result, Defendant has violated NJLAD.

## COUNT III
## Violations of the Conscientious Employee Protection Act (CEPA)
### (Retaliation)

76. The foregoing paragraphs are incorporated herein as if set forth in full.

10

77. Plaintiff engaged in a protected activity within the meaning of CEPA by reporting activity/activities that she reasonably believed constituted fraud/unlawful activities.

78. Plaintiff engaged in a protected activity within the meaning of CEPA by reporting that Defendant was in violation of New Jersey regulations.

79. Immediately after reporting same to her supervisor, Plaintiff was removed from the schedule and instructed not to report to work the next day.

80. Immediately after reporting same to HR, Plaintiff was suspended then fired, despite Plaintiff's pristine disciplinary record throughout her entire tenure with Defendant.

81. Defendant fired Plaintiff because she complained in good-faith about Defendant's unlawful business practices and violations of New Jersey regulations.

82. Furthermore, Defendant fired Plaintiff because she demonstrated that she would continue to report unlawful business practices and violations of New Jersey regulations. .

83. As a direct and proximate cause, Plaintiff has suffered damages.

84. As a result, Defendant has violated CEPA.

## COUNT IV
### Wrongful Termination in Violation of Public Policy (*Pierce*)
### (Retaliation)

10. The foregoing paragraphs are incorporated herein as if set forth in full.

11. It is against the public policy of the State of New Jersey to terminate an individual for reporting violations of New Jersey regulations.

12. It is against the public policy of the State of New Jersey to terminate an

11

individual for objecting to violating New Jersey regulations.

13. Plaintiff engaged in a protected activity by reporting that Defendant was in violation of New Jersey regulations.

14. Immediately after reporting same to her supervisor, Plaintiff was removed from the schedule and instructed not to report to work the next day.

15. Immediately after reporting same to HR, Plaintiff was suspended then fired, despite Plaintiff's pristine disciplinary record throughout her entire tenure with Defendant.

16. Defendant fired Plaintiff because she complained in good-faith about Defendant's unlawful business practices and violations of New Jersey regulations.

17. Furthermore, Defendant fired Plaintiff because she demonstrated that she would continue to report unlawful business practices and violations of New Jersey regulations.

18. As a direct and proximate cause, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff prays that this Court enter an Order providing that:

**A.** Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received ha it not been for Defendant's illegal actions, including but not limited to past lost and future lost earnings;

**B.** Plaintiff is to be awarded liquidated damages and/or punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

**C.** Plaintiff is to be awarded damages for emotional distress and/or pain and

12

suffering and is to be accorded any and all equitable and legal relief as the Court deems just, proper, and appropriate;

**D.**   Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal law; and

**E.**   Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.

Respectfully submitted,

**SWARTZ SWIDLER, LLC**

JOSHUA S. BOYETTE
1101 Kings Highway North
Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685- 7420
Facsimile: (856) 685- 7417

DATED: October 20, 2014

13

## SUMMONS

Attorney(s) _Swartz Swidler LLC_

Office Address _1101 Kings Highway North, Suite 402_

Town, State, Zip Code _Cherry Hill, NJ 08034_

Telephone Number _(856) 685-7420_

Attorney(s) for Plaintiff _Joshua S. Boyette_

Karalyn Schuck
          Plaintiff(s)

          Vs.

Caesar's Entertainment Corporation

          Defendant(s)

**Superior Court of
New Jersey**

ATLANTIC _____ COUNTY

Law _____ DIVISION

Docket No: _L 6 190 -14_

# CIVIL ACTION
# SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

_____
Clerk of the Superior Court

DATED: _10/20/2014_

Name of Defendant to Be Served: _Caesar's Entertainment Corporation_

Address of Defendant to Be Served: _1900 Pacific Avenue, Atlantic City, NJ 08401_

Revised 09/04/2012, CN 10792-English (Appendix XII-A)

# Performance Documentation

**Last Name:** Schuck       **First Name:** Karalyn

**Employee ID:** 800469235       **Position:** Masseur/Masseuse On Call

**Type of Entry:**

☐ Informational Entry

☐ Documented Coaching       ☐ Suspension Pending Investigation

☐ Written Warning

☐ Final Written Warning

☒ Separation of Employment

**Nature of Entry:**

☐ Attendance

☒ Policy/Performance       ☐ Variance

**Prior Documentation (Dates and Type of Entry):**
N/A

**WHAT was the actual behavior observed (versus the expectation)?**
Based on the incidents that occurred on Thursday, October 17 – Friday October 18, 2013: Violation of Bally's Code of Conduct Standards #1, 2, 3, and 13: Failure to demonstrate courtesy and a professional language/tone/manner towards co-workers, failure to be honest during the course of an investigation, engaging in malicious gossip about team members, and failure to act with respect.

**WHY this is important (violation of which policy, impact on Bally's guests or team members)?**
All team members are expected to treat each other with respect, be honest and forthcoming in all communication, and not knowingly make false statements particularly in regards to investigations/incident reports.

**HOW can the behavior be corrected to improve performance going forward?**
N/A

**CONSEQUENCE if behavior continues:**
Employment is being separated.

**Employee Comments:**

**Employee Signature:** Certified Mail #7005 1820 0000 0334 6997       **Date:** 10/22/2013

**Supervisor Signature:**       **Date:**

**Manager Signature:** *[signature]*       **Date:** 10/22/13

(Corrective action/discipline is based on the recommendation of the supervisor)

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

**PLAINTIFFS** Karalyn Schuck
1119 mediterranean Ave
Atlantic City NJ 08401

**DEFENDANTS** Caesar Entertainment
Operating Company
36-2731526 Tax ID

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

Pro Say

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin
☑ Creditor     ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)
☑ Debtor       ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor     ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

See attached complaint

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☑ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23
☑ Check if a jury trial is demanded in complaint | Demand $ 200,000.
Other Relief Sought

FILED
JUL 07 2015
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
JEFFREY P. ALLSTEADT, CLERK

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR <br> Caesar Entertainment co | BANKRUPTCY CASE NO. <br> 15 - 01145 | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF <br> Karalyn Schuck | DEFENDANT <br> Caesars Entertainment | ADVERSARY <br> PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| *Karalyn Schuck* | |
| DATE <br> 6-17-15 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) <br> Karalyn Schuck |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.